IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. _____

FRONT RANGE EQUINE RESCUE,

        Plaintiff,

v.

BUREAU OF LAND MANAGEMENT, and
INTERIOR BOARD OF LAND APPEALS,

        Defendants.

---

**COMPLAINT FOR DECLARATORY RELIEF**

---

Plaintiff Front Range Equine Rescue ("FRER") states and alleges as follows:

**NATURE OF THE ACTION**

1. Pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, Plaintiff brings this action for judicial review of final agency action. Specifically, Plaintiff seeks a declaratory judgment setting aside the March 31, 2016 final decision of the Interior Board of Land Appeals ("IBLA") (the "IBLA Opinion"), which held that FRER lacks standing to challenge the July 28, 2015 decision of the Bureau of Land Management ("BLM"). The IBLA Opinion is attached hereto as Exhibit A.

2. In its July 28, 2015 decision, BLM sought to eliminate all wild horses from the West Douglas Herd Area (the "WDHA") in Colorado in violation of the Wild Free-Roaming Horses and Burros Act of 1971 (the "Wild Horse Act") and the National Environmental Policy

1

Act ("NEPA"). BLM's decision threatens the existence of wild horses by zeroing out populations of horses, in violation of the Wild Horse Act, and removing them from public lands without sufficiently analyzing the environmental impacts of doing so, in violation of NEPA. BLM's decision also directly impacts FRER as an organization, causing it direct harm to its organizational and financial interests.

3. On August 28, 2015, FRER appealed BLM's decision to the IBLA. Specifically, FRER challenged BLM's decision approving the mass removal of wild horses from the WDHA in violation of BLM's mandate to protect wild horses and manage them as a component of public lands under the Wild Horse Act.

4. FRER also challenged BLM's decision under NEPA because the agency failed to adequately analyze the substantial environmental impacts of removing an entire population of wild horses and jeopardized the long-term health of wild horses in Colorado.

5. In its appeal to the IBLA, FRER explained in detail that BLM and the Department of the Interior have inflicted and will continue to inflict economic injury on FRER, based on the specific actions at issue in this case.

6. FRER also identified further harm from a series of ongoing policies enacted by BLM and carried out in the WDHA that intentionally zero out entire populations of wild horses and limit the genetic diversity and viability of wild horses in the WDHA.

7. These actions and practices have caused direct harm to FRER in its own right. The injuries are economic in nature, in addition to the injuries to FRER's organizational activities. Specifically, as it demonstrated before the IBLA, FRER has had to divert its resources for its programs so that it can monitor and investigate the actions of BLM in relation to wild horses in the WDHA.

8. FRER has also been forced to expend resources that would have been spent on other FRER programs in order to educate its donors and the public with respect to the problem in the BLM's management of the WDHA.

9. FRER's claimed economic injuries caused by BLM's illegal actions in the WDHA do not include the costs of litigation or other court or administrative proceedings.

10. On November 25, 2015, BLM filed its Motion to Dismiss FRER's appeal, based solely on its claim that FRER lacked standing to challenge the BLM's decision. In the Motion, BLM agreed that FRER is a proper party to the case. BLM only contended that FRER had not demonstrated standing because the claimed injury "is part and parcel of it [sic] normal advocacy mission." Not only is this not correct, but BLM's argument misconstrued clear precedent on organizational standing entirely.

11. FRER filed a timely response to BLM's Motion to Dismiss, explaining in detail the basis for its standing to bring this appeal, based on longstanding precedent.

12. On March 31, 2016, the IBLA dismissed FRER's appeal for lack of standing. The IBLA Opinion is based on an erroneous interpretation and application of organizational standing doctrine established in cases like *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), and its progeny.

13. The IBLA Opinion deprived FRER of its ability to protect its core organizational interests in the administrative process, and represented an erroneous interpretation of the law.

14. The IBLA Opinion is arbitrary, capricious, an abuse of discretion, and has been issued in a manner not in accordance with the law. In particular, the IBLA Opinion is not in accordance with 43 C.F.R. § 4.410. Accordingly, FRER seeks relief from this Court to reverse the IBLA Opinion and remand the case to IBLA for further review and consideration under the proper standard for standing, and for a decision on the merits of FRER's claim.

## PARTIES

15. Plaintiff FRER is a 501(c)(3) nonprofit organization incorporated in Colorado. Established in 1997, FRER is dedicated to stopping cruelty and abuse of horses through rescue and rehabilitation. FRER is actively involved in the rescue, rehabilitation and adoption to good homes of domestic and wild horses, and in educational efforts regarding responsible horse ownership and wild horse roundups. FRER has assisted thousands of horses through its rescue and educational programs.

16. Defendant BLM is an agency within the United States Department of the Interior. BLM is responsible for the protection and management of wild horses and burros under the Wild Horse Act. The Wild Horse Act authorizes BLM to maintain ranges on public lands as sanctuaries for the protection and preservation of wild horses and burros. 16 U.S.C. § 1333. BLM is required to manage wild horses and burros at the "minimal feasible level." *Id.* In Colorado, BLM is charged with managing the public lands and resources of the White River Field Office, including the WDHA, in accordance and compliance with federal laws and regulations.

17. Defendant IBLA is part of the Office of Hearings and Appeals of the Department of the Interior. By regulation, the IBLA exercises delegated authority to issue final decisions for the Department of the Interior. The IBLA is charged with reviewing appeals of BLM decisions in accordance and compliance with federal laws and regulations.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the APA, 5 U.S.C. § 701, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* The decision for which FRER seeks review is a final agency action. *See* 43 C.F.R. § 4.403. An actual, justiciable controversy exists between the parties, and the requested relief is therefore proper under 28 U.S.C. § 2201, *et seq.* and 5 U.S.C. § 701, *et seq.*

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district, the public lands and resources and agency records in question are located in this district, and Plaintiff is incorporated in this district.

20. The federal government has waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

## STATEMENT OF FACTS

### I. Background on the WDHA Wild Horse Removal

21. Congress enacted the Wild Horse Act to "extend federal protection to wild horses and empower BLM to manage horses roaming public lands as part of the Agency's management of the public lands." *Am. Horse Prot. Ass'n v. Watt*, 694 F.2d 1310, 1311-12 (D.C. Cir. 1982). Under the Wild Horse Act, 16 U.S.C. § 1331, *et seq*., BLM is charged with the "protection, management, and control of wild free-roaming horses and burros on public lands." (P.L. 92-195) (Dec. 15, 1971).

22. In furtherance of its statutory mandate to "protect and manage" wild horses on public lands, BLM "may designate and maintain specific ranges on public lands as sanctuaries for their protection and preservation." 16 U.S.C. § 1333(a). A "herd area" or "HA" is one such "specific range."

23. The WDHA encompasses approximately 123,387 acres of public land in western Colorado. As of August 2015, BLM estimated that there were approximately 365 "excess" wild horses in the WDHA. By December 2015, BLM gathered and permanently removed 167 wild horses from the WDHA, leaving less than 200 wild horses on the range. BLM has plans to, and will, repeat its detrimental course of action by relying on its July 28, 2015 decision.

24. The Wild Horse Act provides that "[i]t is the policy of Congress that wild free-roaming horses and burros shall be protected from capture, branding, harassment, or death; and

to accomplish this they are to be considered in the area where [they were found in 1971], as an integral part of the natural system of the public lands." 16 U.S.C. § 1331. This mandate is violated if a herd population is zeroed out by the agency charged with protecting it.

25. Based on its past and planned future actions, BLM is neither managing wild horses where found in 1971 in the spirit of the Act, nor treating wild horses as an integral part of the natural system of public lands. Moreover, BLM has failed to adequately analyze the significant environmental impacts of permanently removing an entire population of wild horses from the range. Accordingly, BLM's management of the WDHA is unsupported and/or unlawful under the Wild Horse Act and NEPA.

## II. Procedural History of the BLM Decision

26. On July 28, 2015, BLM issued a final Decision Record and associated Environmental Assessment ("EA"), DOI-BLM-CO-N05-2015-0023-EA.

27. Previously, FRER participated in the administrative process that culminated in the issuance of the Decision Record and EA. 43 C.F.R. § 4.410(a), (b). Specifically, on February 14, 2015 and May 5, 2015, FRER filed comments with BLM challenging the agency's proposed action to eliminate all wild horses from the WDHA.

28. On August 28, 2015, FRER filed a timely Notice of Appeal to the IBLA. This appeal was numbered IBLA 2015-235. FRER filed a timely Statement of Reasons for its appeal of BLM's Decision Record on September 25, 2015.

29. On November 25, 2015, BLM filed a Motion to Dismiss FRER's appeal for lack of standing. BLM argued that FRER had not established that it is "adversely affected" by the BLM decision because (1) FRER did not provide an affidavit or declaration of an affected individual member showing how that member had been adversely affected by BLM's decision; and (2) FRER did not prove that it will be or is substantially likely to be injured.

30. FRER filed a timely response to BLM's Motion to Dismiss. In its opposition, FRER again established that it had been adversely affected by BLM's action through the harm to FRER's organizational interests caused by BLM's decision. FRER supplemented its arguments with the declaration of its president, Hilary Wood. Ms. Wood described in detail the injury suffered by FRER as a result of BLM's unlawful conduct in the WDHA.

31. Specifically, Ms. Wood alleged that FRER had been forced to divert resources from its programs in order to investigate, monitor, and educate the public about BLM's illegal activities in the WDHA. In doing so, FRER alleged cognizable standing under Article III of the federal Constitution, and in line with the landmark United States Supreme Court case, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ("*Havens*"), and many cases following the principles delineated in *Havens*.

### III. The IBLA Opinion

32. On March 31, 2016, the IBLA issued an order granting BLM's Motion to Dismiss. *See* 187 IBLA 269 (2016).

33. FRER files this Complaint to seek review of the IBLA's decision to dismiss Appeal No. IBLA 2015-235 for lack of standing.

34. Pursuant to 43 C.F.R. § 4.410, an appellant has standing to bring an appeal before the IBLA if it can demonstrate that it is both a "party to a case" and "adversely affected" by the BLM's decision.

35. It is undisputed that FRER is a "party to the case" within the meaning of 43 C.F.R. § 4.410(b), because it "participated in the [White River Field Office's] NEPA process by submitting scoping comments and comments on the preliminary EA." IBLA Opinion, 187 IBLA at 276.

36. The IBLA based its dismissal of FRER's appeal on its conclusion that FRER is not "adversely affected" by BLM's decision to approve the gather and removal of wild horses in the WDHA.

37. While an appellant need not prove that an adverse effect will, in fact, occur as a result of the BLM action, the threat of injury and its effect on the appellant must be more than hypothetical. IBLA Opinion, 187 IBLA at 276.

38. The IBLA Opinion stated that an appellant must demonstrate "'a nexus between the decision under appeal and the interests which the [organization] . . . seeks to protect' and which are injured, or are substantially likely to be injured, by the decision." IBLA Opinion, 187 IBLA at 279 (quoting *Colorado Open Space Council*, 109 IBLA 274, 279 (1989). The Declaration of Hilary Wood did exactly that, clearly and unequivocally.

39. In addition, the IBLA Opinion recognized the standard for organizational standing outlined in *Havens*. IBLA Opinion, 187 IBLA at 282. In *Havens*, the Court found that a housing services organization had standing to sue where it devoted resources to identifying and counteracting the defendant's unlawful practices, which then impaired its ability to provide other organizational services to the community. 455 U.S. 363, 379 (1982). The Court concluded: "Such concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests." *Id.*

40. The IBLA Opinion cited extensively from the Declaration of Hilary Wood, FRER's founder and president. As described in the Declaration of Ms. Wood, FRER diverts significant time, money, and efforts away from its other work in order to evaluate, research, investigate, and combat BLM's illegal conduct affecting wild horses, and it has specifically done so with respect to BLM's zeroing out of the herds in the WDHA. FRER has undertaken substantial investigations and evaluations of BLM's efforts in the WDHA, expending resources

that would have been used on other organizational missions, but for BLM's illegal conduct in connection with this HA.

41. FRER's economic injury in fact is unrelated to this litigation or to FRER's appeal of the BLM's decision. Its injury is caused by its work monitoring and investigating the BLM's illegal activities, including those in the WDHA, and the diversion of resources from other of its programs.

42. Because of BLM policies harming the genetic health and viability of wild horses in the WDHA, FRER is forced to expend its limited resources tracking, investigating, and educating others about BLM's unlawful actions – resources that would otherwise be used for FRER's other campaigns and organizational goals, including its efforts to keep wild horses free from roundups and confinement to BLM long-term holding areas, adoption of rescued or removed wild horses and horses destined for slaughter to good homes, and educational efforts regarding wild horse roundups, the cruelty of horse slaughter, and responsible horse ownership.

43. FRER has a national campaign to "Save the Wild Horses." FRER's mission to protect and sustain wild horses on federal public lands is frustrated by BLM's plan to reduce the herds in the WDHA to such low genetic diversity levels that the future health of the herds is jeopardized.

44. Despite the numerous statements from Ms. Wood demonstrating the various ways in which FRER has expended its limited resources directly because of BLM's actions in the WDHA, the IBLA Opinion concluded that FRER's only injury is the expenditure of resources on the instant lawsuit. Nothing in Ms. Wood's Declaration even suggested that it was claiming litigation costs as part of its injuries, and FRER specifically disavowed that notion in its briefing.

45. The IBLA's conclusion both mischaracterizes Ms. Wood's Declaration and ignores the clear nexus between BLM's unlawful treatment of wild horses in the WDHA and

FRER's diversion of resources from other organizational goals and activities. Moreover, the IBLA Opinion misstates the standard for *Havens* standing.

46. Under *Havens*, an organization has standing if it shows that the defendant's unlawful conduct caused the organization to divert resources at the cost of other organizational activities. 455 U.S. at 367.

47. As required by *Havens*, FRER sufficiently alleged that the challenged action directly affected its ongoing organizational activities, drained its resources, and frustrated its mission.

48. The IBLA Opinion was contrary to law and to the applicable law recognized by the IBLA, and was arbitrary, capricious, an abuse of discretion, and has been issued in a manner not in accordance with the law.

### IV. The Present Action

49. Pursuant to the APA, 5 U.S.C. § 702:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

50. 5 U.S.C. § 704 further states: "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."

51. FRER has exhausted its administrative remedies and has timely filed this Complaint.

### FIRST CLAIM FOR RELIEF
### VIOLATIONS OF THE ADMINISTRATIVE PROCEDURE ACT

52. Plaintiff realleges and incorporates by reference all of the preceding paragraphs.

53. The IBLA Opinion is arbitrary, capricious, an abuse of discretion, and has been issued in a manner not in accordance with the law. 5 U.S.C. § 701, *et seq.* In particular, the IBLA Opinion is not in accordance with 43 C.F.R. § 4.410.

54. The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201.

55. There is an actual controversy between FRER and Defendants regarding the standing of FRER to appeal BLM's July 28, 2015 Decision Record to the IBLA.

56. By issuing a declaratory judgment holding that FRER has standing to appeal BLM's July 28, 2015 Decision Record to the IBLA, this Court would declare FRER's rights and finally resolve a justiciable controversy between FRER and Defendants.

57. In requesting declaratory relief, FRER is requesting an interpretation of the rights, legal status, and relationships of the parties under the law and facts as stated herein.

## PRAYER FOR RELIEF

WHEREFORE, FRER respectfully requests that the Court grant the following relief:

A. Order, declare, and adjudge that IBLA's decision on standing was arbitrary and capricious in violation of the APA;

B. Issue an order setting aside, reversing and remanding the IBLA Opinion, 187 IBLA 269, granting BLM's Motion to Dismiss for Lack of Standing;

C. Award FRER its reasonable costs, litigation expenses, and attorneys' fees associated with this litigation as provided by all applicable authorities; and

D. Grant such other further relief as the Court deems just and proper.

DATED: April 29, 2016

SCHIFF HARDIN LLP

*/s/ Bruce A. Wagman*
Bruce A. Wagman
Schiff Hardin LLP
One Market, Spear Tower, 32nd Fl.
San Francisco, CA 94105
Tel: (415) 901-8700
Fax: (415) 901-8701
Email: bwagman@schiffhardin.com

Attorneys for Plaintiff
FRONT RANGE EQUINE RESCUE

Name of Plaintiff

Front Range Equine Rescue
2185 NW 114th Loop
Ocala, FL 34475

40858-0001
SF\321828699.2